# IN THE COURT OF APPEALS OF IOWA

No. 15-0053
Filed December 9, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**QUENTIN MOHAMMED PENDLETON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, James C. Ellefson, Judge.

        Quentin Pendleton appeals the sentence imposed following his conviction for willful injury causing bodily injury.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kevin Cmelik and Tyler J. Buller, Assistant Attorneys General, for appellee.

        Considered by Doyle, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Quentin Pendleton appeals the sentence imposed following his conviction for willful injury causing bodily injury, in violation of Iowa Code section 708.4(1) (2013). He claims the district court considered an improper factor at sentencing and abused its discretion in imposing a prison sentence. Because the sentence was not unreasonable or based on untenable grounds, we affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS.

In June 2014, Pendleton punched his fiancée, Sharon, in the face "several times" before throwing her into a porch railing and striking her in the face "several more times." Pendleton then threw Sharon on the ground and punched her in the face until she lost consciousness. During the melee, Pendleton fractured Sharon's jaw multiple times, causing pain and "significant facial deformity." Oral surgery was required to insert a plate to stabilize Sharon's jaw. Pendleton, who appeared to be intoxicated immediately following the incident, reported to the responding law enforcement officers that he and Sharon had been "just wrestling" and he did not know how she got hurt.

The State charged Pendleton with domestic abuse assault causing bodily injury and willful injury causing serious injury. After reaching a plea agreement, the charge of domestic abuse assault causing bodily injury was dismissed and Pendleton entered an *Alford* plea[1] to the lesser-included offense of willful injury causing bodily injury.

---

[1] An *Alford* plea allows a defendant to consent to the imposition of a sentence without admitting participation in the acts constituting the crime. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

In sentencing Pendleton, the court noted his age at the time of offense and his lack of a violent criminal history. The court then stated:

> On the other side of the ledger are the facts that [the prosecutor] has identified. In the course of the *Alford* plea, we used, I think, considerable care in establishing that the factual basis that I had was based on what the minutes said, and Mr. Pendleton today still takes issue in some unspecified way with those minutes, but nevertheless those are the factual bases. Those are the facts of the crime.
>
> The Court also has before it the fact that the defendant has been on probation on one other occasion and that probation was not successful. It was revoked. There is also the . . . consideration that an *Alford* plea—and I remember the specifics of the plea in this case really allowed the defendant to never come to grips with what it is that he was accused of and what it is that he had done according to the . . . factual basis in this case and so it seems to me—then you throw in the presentence investigation and the presentence investigator's recommendation of a suspended sentence and probation, and it seems to me that there is considerable justification for the Court to go either way in this case.

After considering "the facts of the crime itself and the need for deterrence both to this defendant individually and also of others in the community," as well as taking into account "both the rehabilitation of the defendant and the protection of the community," the court determined it was proper to impose a term of no more than five years in prison and require Pendleton to serve that term.

On appeal, Pendleton alleges the court considered an improper factor in sentencing him. Specifically, he argues the court impermissibly relied on the fact he entered an *Alford* plea, which he claims the court interpreted as a lack of remorse.

## II.    SENTENCING.

We review sentences that fall within the statutory limits for an abuse of discretion. *State v. Seats*, 865 N.W.2d 545, 552 (Iowa 2015). Our task is not to

second guess the sentencing court but to determine whether its decision was unreasonable or based on untenable grounds. *Id.* at 553. In making this determination, we consider the societal goals of sentencing, which focus on rehabilitation of the offender and protection of the community. *Id.* at 552. We weigh a number of factors, "'including the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform.'" *Id.* at 552-53 (*quoting State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002)). However, if the court relies on an improper factor in sentencing a defendant, even if it was a secondary consideration, an abuse of discretion has occurred. *State v. Lovell*, 857 N.W.2d 241, 243 (Iowa 2014).

A sentencing court may consider a defendant's lack of remorse in choosing a sentence that will provide for the defendant's rehabilitation and protect the public from further offenses by the defendant. *State v. Knight*, 701 N.W.2d 83, 89 (Iowa 2005). This is true "even when the defendant professes his innocence by entry of an *Alford* plea" because "the defendant entering an *Alford* plea amidst claims of innocence is no different than a defendant found guilty amidst claims of innocence. The defendant's lack of remorse is a pertinent sentencing factor in both situations." *Id.*

Pendleton argues this is not a case where the court considered the defendant's demonstrated lack of remorse in spite of his *Alford* plea. Rather, he claims the court relied on his *Alford* plea as an indication he failed to accept responsibility for the crime, which he argues is an improper consideration.

Pendleton further argues he demonstrated both remorse and acceptance of responsibility during the allocution phase of sentencing.

Whether the court may find a defendant fails to accept responsibility or lacks remorse based on the defendant's entry of an *Alford* plea has not been explicitly addressed in Iowa.[2] However, our supreme court has outlined generally what the sentencing court is and is not permitted to consider in determining if a defendant accepts responsibility or demonstrates remorse. Unequivocally, a defendant's decision to plead not guilty and stand trial may not be considered by the sentencing court. *Id.* at 87. A defendant's lack of remorse or failure to accept responsibility may be found "based on facts *other than* the defendant's failure to plead guilty." *Id.* (emphasis added). In making that

---

[2] The entry of an *Alford* plea "is, as a general proposition, inconsistent with the acceptance of responsibility." *United States v. Gordon*, 979 F. Supp. 337, 342 (E.D. Pa. 1997); *see also State v. Meynardie*, 616 S.E.2d 21, 26 (N.C. Ct. App. 2005) ("Defendant's *Alford* plea indicates a reluctance to take full responsibility for his criminal conduct."). For this reason, a number of courts have held a defendant's decision to enter an *Alford* plea is a relevant and appropriate consideration when determining a defendant's sentence. *Gordon*, 979 F. Supp. at 342*; see also United States v. Morris*, 139 F.3d 582, 584 (8th Cir. 1998) (rejecting a claim that consideration of an *Alford* plea violates a defendant's Fifth Amendment rights); *United States v. Harlan*, 35 F.3d 176, 181 (5th Cir. 1994) ("We hold that a district court may consider whether a defendant has entered an *Alford* plea as a relevant factor when deciding whether to afford a defendant a reduction in offense level for acceptance of responsibility."); *United States v. Rodriguez*, 905 F.2d 372, 374 (11th Cir. 1990) ("If an unqualified guilty plea can serve as evidence of a defendant's acceptance of responsibility, . . . then logically the qualifications a defendant states in his guilty plea may be evidence that he has not fully recognized and accepted personal responsibility for the crime."); *State v. Baker*, 290 P.3d 1284, 1289 (Idaho Ct. App. 2012) ("Where a district court accepts an *Alford* plea, it may nonetheless assess the defendant's potential for rehabilitation when sentencing by considering that the defendant entered an *Alford* plea and did not admit guilt or fully accept responsibility for the crime."); *Meynardie*, 616 S.E.2d at 26 (noting that "defendant's *Alford* plea merits against finding that defendant accepted responsibility for his conduct"); *cf. United States v. Boyle*, 10 F.3d 485, 490 (7th Cir. 1993) (affirming the district court's refusal to reduce defendant's offense level under the sentencing guidelines for acceptance of responsibility after a nolo contendere plea because defendant had not demonstrated any responsibility for his criminal conduct).

determination, the sentencing court is permitted to consider "'any admissible statement made by the defendant pre-trial, at trial, or post-trial,' or by 'other competent evidence properly admitted at the sentencing hearing.'" *Id.* at 87-88 (quoting *State v. Shreves*, 60 P.3d 991, 996 (Mont. 2002)).

Here, the sentencing court expressed concern about the way in which Pendleton entered his plea but avoided acknowledging "what it is that he was accused of and what it is that he had done according to the . . . factual basis in this case." The evidence bears out this concern. Due to his *Alford* plea, Pendleton was not required at the plea hearing to state what he had done to commit willful injury causing bodily injury. Instead, he only agreed that if the witnesses listed in the minutes of evidence testified in a manner consistent with the information contained in the minutes, he would be found guilty of willful injury causing bodily injury. The sentencing court noted that at the time of sentencing, Pendleton "still [took] issue in some unspecified way" with the minutes of evidence used to establish a factual basis for his conviction. In other words, Pendleton continued to deny the factual basis for his conviction after pleading guilty.

Pendleton claims he acknowledged his actions during the allocution portion of the sentencing hearing. A review of his statement shows Pendleton acknowledged he was being sentenced for "things that I did do" but never stated what those things were. Nor did Pendleton recognize the severity of the harm he caused his fiancée. Instead, he downplayed the severity of his act—striking her in the face "approximately fifteen times in total"—by saying he "didn't intentionally

mean to do it" and by characterizing his act as "a bad mistake" and "stupid." Several times at sentencing, Pendleton stated he had never done "anything like that" or that he does not "do things like that." In spite of these claims, Pendleton said later during the sentencing hearing that he had "changed."

Pendleton's attempt to place the blame on outside factors also shows he failed to accept responsibility for his actions. Despite claiming he was "not going to blame alcohol for [his] mistake or [his] actions," Pendleton went on to say that he had drunk "a little too much" on the night of the assault because "it was a holiday." He also tried to shift the blame to the area he was living at the time of the assault, which he categorized as "a bad place," claiming he "never really wanted to be there from the beginning."

The record regarding Pendleton's remorse is also concerning. During allocution, he did apologize to "the State of Iowa" and "the City of Marshalltown," and asked the court to "just forgive" him. However, Pendleton never apologized to or even mentioned the victim of his crime. We also note the distinction between expressing remorse and accepting responsibility for one's actions. *See United States v. Burns*, 925 F.2d 18, 20-21 (1st Cir. 1991) (affirming the sentence imposed despite defendant's sincere remorse after recognizing the sentencing court "drew a distinction between remorse and acceptance of responsibility); *Meynardie*, 616 S.E.2d at 26 (noting that a defendant's apology "does not definitely establish that defendant took responsibility or his criminal conduct").

The district court did not consider an improper factor in finding Pendleton failed to take responsibility for his actions. Pendleton failed to acknowledge his wrongdoing before or after entering his plea. At the sentencing hearing, he continued to minimize the seriousness of his actions and failed to show remorse toward the victim. Because the sentencing court did not consider an inappropriate matter in reaching its conclusion, no abuse of discretion occurred.

We further conclude the district court properly exercised its discretion in sentencing Pendleton to a term of incarceration and declining his request for probation. In imposing the sentence, the court cited the need to deter Pendleton and others in the community from engaging in similar acts, Pendleton's need for rehabilitation, and the community's need to be protected from harm. Pendleton had only one prior conviction—a 2010 possession-of-a-controlled-substance charge, for which he received a deferred sentence—but his deferred judgment was revoked, showing he was not successful on probation. Although Pendleton has not been convicted of other violent crimes, the severity of the injuries he inflicted here, coupled with his lack of remorse and failure to take responsibility for his actions, warrants the prison sentence imposed.

Nothing in the record convinces us the sentence imposed was unreasonable or based on untenable grounds. Accordingly, we affirm.

**AFFIRMED.**